## IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF ALABAMA NORTHERN DIVISION

| | |
|---|---|
| **BRUCE HARMS (202029),** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **Civil Action No.: 2:06-CV-283-MHT** |
| | ) **(WO)** |
| **RICHARD ALLEN, BOB RILEY** | ) |
| **And SIDNEY WILLIAMS,** | ) |
| | ) |
| **Defendants.** | ) |

## SECOND AMENDED ANSWER and SPECIAL REPORT

**COMES NOW**, the Defendants **Richard Allen and Bob Riley**, by and through *Bettie J. Carmack* of the State of Alabama Attorney General's Office, and, in response to this Honorable Court's Order dated August 14, 2006, state as follows:

### PARTIES

1.   **Bruce Harms** (Plaintiff) – an Alabama Department of Corrections inmate currently housed at Easterling Correctional Facility, located at 200 Wallace Drive  Clio, Alabama 36017-2615.

2.    **Richard Allen** (Defendant) – The Alabama Department of Corrections (ADOC) prison commissioner.

3.   **Bob Riley** (Defendant) – Governor of the State of Alabama.

4**.**   **Sidney Williams** (Defendant)  – Chairman of the Alabama Board of Pardons and Parole.

## ANSWER

In response to the Plaintiff's allegations, Defendants state as follows:

1. Defendants deny Plaintiff's allegations and demand strict proof thereof.

2. Defendants deny that any of the Plaintiff's constitutional rights have been violated.

3. Defendants assert the affirmative defenses of sovereign, qualified immunity, and absolute immunity.

4. Defendants deny each and every material allegation not expressly admitted herein and demand strict proof thereof.

## PLAINTIFF'S CLAIMS

The Plaintiff has made the following claims against the defendants regarding the living conditions at Easterling Correctional Facility:

### ORIGINAL CLAIMS

I.    The prison is overcrowded and, as a result,

   A.    The facility houses 1380 inmates when it can only hold 650.
   B.    The dorms were designed to hold 60 men, but there are currently 130 men in the dorms.
   C.    The bathroom facilities are inadequate.
      1.    One urinal
      2.    5 toilets
      3.    8 shower heads
   D.    Staph infections are occurring because of the conditions of the prison.
   E.    Hepatitis C is a major concern, but the prisoners are only vaccinated for Hepatitis B.
   F.    There is not enough hot water.
   G.    The barber shop conditions are unsanitary and, as a result, scalp diseases and skin diseases are evident.
   H.    The overcrowding has caused a fire hazard.

I.      The officers are working too much.

J.      The prison is understaffed.

*AMENDED CLAIMS*
(only if different from original claims)

The prison overcrowding is allegedly also causing the following violations:

K.      The prison health care facility has an excessive caseload and, as a result, there is only one doctor for an "over double capacity population at E.C.F."

L.      The prisoners are not allowed "proper time to exercise on the prison's recreation yard."

M.      The prisoners are not allowed adequate time to use the prison law library.

N.      The bed linens are dirty and not enough bed linens are provided to keep the prisoners "warm at night."

O.      The prison fire alarm is faulty.

P.      The air quality in the prison is unsafe.

Q.      The prison drinking water is unsafe.

R.      There is excessive noise in the prison that interferes with the prisoners' ability to get a good night's sleep.

II.      The prison is deliberately indifferent to the above stated conditions.

## <u>IMMUNITY</u>

***HARMS'S COMPLAINT IS DUE TO BE DISMISSED BECAUSE THERE CAN BE NO LIABILITY UNDER THE THEORY OF RESPONDEAT SUPERIOR OR VICARIOUS LIABILITY.***

In his complaint, the only defendants initially named were the Prison Commissioner, the Governor of the State of Alabama and the Chairman of the Board of Pardons and Paroles. Harms attempted to amend his complaint to add the Attorney General and the Board of Pardons and Paroles, the entity. This Honorable Court denied Harms's request to add the additional defendants.

Therefore, the only named defendants are the Prison Commissioner, the Governor of the State of Alabama and the Chairman of the Board of Pardons and Paroles.

"It is clear that [these] defendants are designated defendants solely on account of their ultimate supervisory roles as head of state government and head of the government which oversees state prisons. The law is well[-]settled that supervisory officials cannot be held liable in an action brought pursuant to 42 U.S.C. § 1983 under the theory of respondeat superior or vicarious liability." Ford v. Deloach, No. Civ. A. 03-B-0110-N, 2005 WL 1243346, at *3 (M.D. Ala. May 25, 2005).

To recover from these defendants, Harms would have to show that they are "liable either through their personal participation in the acts comprising the alleged constitutional violation or the existence of a causal connection linking their actions to the violation." *See id*. Although Harms has listed a number of alleged constitutional violations at Easterling Correctional Facility related to prison overcrowding, Harms has failed to show how the actions of Commissioner Allen or Governor Riley contributed to these alleged violations. As a result, Harms's complaint is due to be dismissed. *See* Ford v. Deloach, 2005 WL 1243346, at *4 ("[E]ven if [the plaintiff] could cure his deficient showing to maintain his action against the Governor and Corrections Commissioner, the claims against them would warrant dismissal since they are grounded solely on vicarious liability.")

## <u>ARGUMENT ON THE MERITS</u>

"The Eighth Amendment . . . prohibits conditions of confinement that involve the wanton and unnecessary infliction of pain . . . The Amendment[, however,] only prohibits those conditions that deny the 'minimal civilized measure of life's necessities.'" <u>Patterson v. Campbell</u>, No. 305CV443-S, 2006 WL 517607, at *3 (W.D. Ky. Feb. 28, 2006) *quoting* <u>Rhodes v. Chapman</u>, 452 U.S. 337, 347-348 (1981).  Conditions that may evidence the denial of minimal life's necessities due to prison overcrowding, include: deprivations of essential food, medical care, or sanitation and an increase in violence.  *See* <u>Rhodes v. Chapman</u>, 452 U.S. at 347-348.  Conditions, however, that are just "restrictive and even harsh, . . . are part of the penalty that criminal offenders pay for their offenses to society." *See id*., at 347.


**A and B.       Prison overcrowding and double capacity dorms**

Harms has alleged that various conditions at Easterling Correctional Facility constitutes cruel and unusual punishment and, as a result, are violative of the Eighth Amendment.  In this case, the Warden agrees that the facility has approximately 1269 inmates and was designed to hold 652 inmates.  (*See* exhibit A)  To double its capacity, the inmates are currently housed on stacked bunk beds in a dorm. *See id*. Although living in a crowded dorm situation in a prison may not seem ideal, such conditions do not evidence cruel and unusual punishment. *See* <u>Rhodes v. Chapman</u>, 452 U.S. at 347 ("[T]here is no evidence that double celling .

. . either inflicts unnecessary or wanton pain or is grossly disproportionate to the severity of crimes warranting imprisonment.")

### C.     The bathroom facilities are inadequate.

Harms contends that the bathroom facilities are inadequate because there is only one urinal, 5 toilets, and 8 shower heads. According to Warden Mosley, for every 4 or 5 inmates there are: 5 urinals, 7 sinks, 5 toilets and 8 shower heads. (*See* exhibit C)  The fact that there is never a line of inmates waiting to use the bathroom facilities indicates that the facilities are adequate for inmate use.  (*See* exhibit A)

**Staph infections are alleging occurring in the prison.**

According to Warden Mosley, there are no staph infections occurring in the prison. (*See* exhibit C)  In fact, all the shower areas are "sprayed with bleach on a monthly basis to control any Staph infections." (*See* exhibit C)

### D.     Hepatitis C is a major concern in the prison, yet the prisoners are vaccinated only for Hepatitis B.

According to Warden Mosley, on November 22, 2005 the inmates were vaccinated for Hepatitis B and a follow-up vaccination was done on December 22, 2005. (*See* exhibit C)  According to Kay Wilson, Health Services Administrator, Hepatitis C is not a major concern at Easterling. *See id*.  This conclusion is further supported by <u>Federal Bureau of Prisons Clinical Practice Guidelines,</u> which has

stated that there have been no reports of widespread outbreaks of Hepatitis C

(HCV) in the correctional setting. (*See* exhibit B, at pg. 21)[1]  Moreover, even if

Hepatitis C were a concern for inmates at Easterling, there is currently no

vaccination available for Hepatitis C.  *See id*., at pg. 38.


        **F.      There is not enough hot water.**

        According to Cecil Robinson, Plant Maintenance Supervisor, there is no

problem with hot water at Easterling.  "Hot water heaters have been replaced in all

dorms . . . and [e]very dorm has hot water." (*See* exhibit D)


        **G.      The barber shop conditions are unsanitary.**

        According to Warden Mosley, there is not a problem with infections in the

barber shop due to unsanitary conditions.  (*See* exhibit A)  More specifically,

"[i]nmate barbers are given supplies to clean the hair clippers between each

inmate's hair cut and are checked by our supply officer." (*See* exhibit C)


        **H and O.      The overcrowding has caused a fire hazard and the prison
                fire alarm is faulty.**

        According to Warden Mosley there is not a fire hazard.  (*See* exhibit C) The

prison conducts monthly fire drills and the fire alarm system is working properly.

*Id.*

---

[1]  *See* Federal Bureau of Prisons Clinical Practice Guidelines, October 2005, pg.
21, at http://www.bop.gov/news/PDFs/hepatitis.pdf

**I and J.    The prison is understaffed and the officers work too much.**

According to Warden Mosley the prison is properly staffed and work overtime only as needed. (*See* exhibit E)

**K.    The prison health care facility is understaffed.**

According to Warden Mosley, the prison physician is able to handle the needs of the prisoners at Easterling.  (*See* exhibit E)

**L.    The prisoners are not allowed recreation time.**

According to Warden Mosley, "[i]nmates are allowed two or three recreation/yard times on First Shift and one recreation /yard time on Second Shift. Inmate recreation time is based on daily inmate counts and feeding time."  (*See* exhibit A)

**M.    The prisoners not allowed adequate time in the law library.**

According to Warden Mosley, "[a]ll inmates [are] . . . allowed to use [the law library] when their assigned dormitory has yard and gym call.  Inmates that need additional time have the opportunity to request for additional time by [making] a written request . . . to the Law Library Officer." (*See* exhibit A)

**N.     The bed linens are dirty and the inmates do not have enough linen to be "warm at night."**

According to Warden Mosley, "[a]ll inmates at Easterling Correctional Facility are provided proper bedding.  [The inmates] receive one blanket, two sheets, one pillow case, and one mattress.  Inmates' blankets are washed once a month, upon inmate request, by turning in their blankets to be washed." (*See* exhibit A)

**P.     The air quality is unsafe.**

According to Warden Mosley, the "dorms are ventilated by windows, fans, and ventilator fans.  The quality of the air in the dorms is acceptable." (*See* exhibit A)

**Q.     The prison drinking water is unsafe.**

The City of Clio has been asked if there have been any health complaints regarding the drinking water.  The City of Clio stated that there had been no complaints regarding the drinking water. (*See* exhibit A and its attachment)  More specifically, the Water Quality Reports for 2003 and 2004 indicate that the water supply meets the requirements established by the Alabama Department of Environmental Management (ADEM) and the Environmental Protection Agency (EPA).  (*See* exhibit A attachment)

**R.      There is excessive noise that interferes with the prisoner's ability to get a good night's sleep.**

Warden Mosley admits that the prisoner's receive a "wake-up call" for their morning meal at 3:00 a.m.. (*See* exhibit A)  The "wake-up call" is made over a broadcast speaker in the dorm. *See id*. The only alternative would be to personally walk to each and every prisoner's bed and wake him up and ask him to come to breakfast.  The prison does not have enough staff to personally inform prisoners of their morning meal.  As a result, some of the prisoners will have their good night's sleep interrupted.

## CONCLUSION

Harms has made numerous allegations regarding the conditions at Easterling Correctional Facility.  Harms, however, has failed to show that the conditions at Easterling have resulted in his being denied minimal life necessities and, as a result, Harms complaint is due to be dismissed.  *See* Patterson v. Campbell, No. Civ. A. 305CV443-S, 2006 WL 517607, at *3 (W. D. Ky. Feb. 28, 2006)("Although Plaintiff describes uncomfortable, arguably harsh conditions . . . none of the allegations fall within the ambit of conduct or conditions that run afoul of the Eighth Amendment.  The complaint contains no allegations that Plaintiff was deprived of the minimal measure of life's necessities.  The complaint thus fails to assert . . . conditions . . . of [a] constitutional magnitude.")

Respectfully submitted,

TROY KING (KIN-047)
ATTORNEY GENERAL
By:


 /s/*Bettie J. Carmack*
Bettie J. Carmack (CAR-132)
*Assistant Attorney General*
*Civil Litigation Division*
11 South Union Street
Montgomery, AL 36130
Telephone: (334) 353-5305
Facsimile: (334) 242-2433


## CERTIFICATE OF SERVICE


This is to certify that I have on this **1st** day of **September**, **2006**, served

copies of the foregoing *Second Amended Answer and Special Report* upon the

plaintiff by depositing same in the United States Mail, addressed as follows:

**Bruce Harms**
**AIS #: 202029**
**Easterling Correctional Facility**
**200 Wallace Drive**
**Clio, AL  36017**


/s/ *Bettie J. Carmack*
Bettie J. Carmack (CAR -132)
*Assistant Attorney General*
*Civil Litigation Division*